IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MINISTRY OF DEFENCE OF
THE STATE OF KUWAIT

       Plaintiff,

v.                                  Civil Action No. 1:22-cv-01270

JOSEPH MOHAMMAD NAFFA,

and

NAFFA & ASSOCIATES, LLP,

       Defendants,

## COMPLAINT

The Plaintiff, by and through its undersigned counsel, states its Complaint against the above-named Defendants as follows:

### Introduction

The Plaintiff, the Ministry of Defence of the State of Kuwait ("Defence Ministry") is an established department of the government of Kuwait, a sovereign foreign nation. The Defence Ministry implements Kuwait's defence policy and governs all branches of the Kuwait Armed Forces. The Defence Ministry conducts business in the United States of America *inter alia* through its Defence Attache Office associated with the Kuwait Embassy in Washington, D.C. (the "Military Office"). The Military Office has an ongoing need for legal advice and legal action under U.S. law to fulfil its mission in the United States, and the Military Office retains local U.S. counsel to provide those services. The Military Office is administered at any given time by Plaintiff's

designated personnel, typically including a Defence Attaché. Plaintiff appoints a new Military Office administration periodically as assigned personnel retire or are given new assignments.

In 2011, Defendant Naffa approached Plaintiff's personnel who constituted a prior administration of Plaintiff's Military Office. By Naffa's claims to be able to provide specific legal services, by presenting himself as part of a multi-lawyer law firm, and using titles suggesting that he was an attorney, Naffa falsely held himself out as a lawyer capable of performing a range of legal services.

The Military Office administration was not familiar with applicable U.S. and D.C. regulations on the unauthorized practice of law and accepted Naffa's assurance that Naffa could provide the desired legal services. Plaintiff was induced by Naffa's false representations to enter a written "Legal Services Contract" in 2011, and by the continuation of false representations, to enter similar successor contracts in 2014 and 2018. From 2011 to 2018, Plaintiff paid approximately $635,000 to Naffa to provide legal services to at least three successive administrations of the Military Office.

Naffa did not correct anyone referring to Naffa as a lawyer, nor did Naffa affirmatively and clearly disclose to the personnel subsequently assigned to the Military Office that Naffa was not a lawyer.

The legal services that Naffa contracted to and purported to provide to Plaintiff included numerous services that--under the rules of the District of Columbia Court of Appeals and the rules of practice established by federal agencies such as the IRS and USCIS--can *only* be provided by a licensed attorney in good standing. Some examples of the services Naffa contracted to provide include providing legal advice to Plaintiff and its individual employees, participating in mediations

and arbitrations, providing advice to staff on immigration law, and dealing with U.S. government agencies including the USCIS and the IRS. In providing these and other services, Naffa engaged in the unauthorized practice of law.

Plaintiff became aware at the end of 2019 that Naffa had never passed a bar exam and was not licensed to practice law in any U.S. jurisdiction. Plaintiff further learned that Naffa never established his purported law firm (previously understood to be a limited liability partnership) as a legal entity separate from his own person, nor did he register this entity as a law firm with the bar of any U.S. jurisdiction.

Plaintiff also discovered that while occupying a position of trust as Plaintiff's purported legal counsel, Naffa took actions that enriched him at Plaintiff's expense, in breach of his duties to Plaintiff.

Plaintiff seeks rescission of its contracts with Naffa and money damages pursuant to the claims set forth herein, as specified below.

## **The Parties**

1.     The Plaintiff, the Ministry of Defence of the State of Kuwait ("Defence Ministry") is a foreign governmental body organized within the executive branch of Kuwait, a sovereign foreign nation. The Defence Ministry implements Kuwait's defence policy and governs all branches of the Kuwait Armed Forces. The Defence Ministry conducts business in the United States of America *inter alia* through a Defense Attaché Office associated with the Kuwait Embassy in Washington, D.C. (the "Military Office").

2.      Defendant Joseph Mohammad Naffa ("Naffa"), owns a home at 2405 Luckett Avenue, Vienna, VA 22180, in the City of Vienna in the Commonwealth of Virginia, and on information and belief Naffa resides at that address.

3.       On information and belief, Naffa & Associates, LLP, although its name indicates that it is a limited liability partnership, has never been granted existence by any U.S. jurisdiction, either as a limited liability partnership or as any other type of legal person.

4.      On information and belief, Naffa & Associates, LLP is an unregistered trade name for a sole proprietorship business operated by Naffa, and is named as a Defendant herein as a precautionary measure.

## Jurisdiction and Venue

5.      This is an action for breach of contract, fraud in the inducement, breach of fiduciary duty, and conversion arising under the laws of the District of Columbia.

6.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(4) because the amount in controversy exceeds $75,000 and complete diversity of citizenship exists: The Plaintiff Ministry of Defence of the State of Kuwait is a unit established as part of a foreign government. Defendant Naffa resides in the Commonwealth of Virginia. Defendant Naffa & Associates, LLP is (on information and belief) not a separate legal person and is identical to Defendant Naffa.

7.      Venue is proper in this Court under 28 USC 1391(b) because all Defendants can be found in the Alexandria Division of the U.S. District Court for the Eastern District of Virginia. Defendant Naffa resides in the Alexandria Division of this District. On information and belief,

Defendant Naffa & Associates, LLP is a sole proprietorship that is legally indistinguishable from Naffa himself and has no domicile separate from Naffa's, so that it also resides in this Division.

8.      Venue is also proper in this Court because Defendants transacted business within the Alexandria Division. Defendants used a business address in McLean, Virginia while initially contacting Plaintiff's personnel, when misrepresenting their status and qualifications, and in initially contracting with Plaintiff.

### Factual Allegations

9.      Plaintiff incorporates by reference the allegations of the Complaint contained in paragraphs 1 through 8, as if set forth herein.

10.     In all times relevant to this case (from 2011 to 2019) Defendant Naffa had never passed a bar exam and was not licensed to practice law in any U.S. jurisdiction.

11.     In early 2011, Defendant Naffa contacted officials of a previous administration of the Military Office and falsely represented to those officials that Defendant Naffa was qualified to provide a broad range of legal services.

12.     In 2011 Naffa submitted to Plaintiff, through its Military Office in the District of Columbia, a proposal to provide specific legal services to the Military Office.

13.     The then-acting Defence Attaché of the Military Office executed (on behalf of Plaintiff) a Legal Services Agreement dated April 27, 2011 (hereinafter the "2011 Legal Services Agreement"). A copy of the 2011 Legal Services Agreement is attached to this Complaint as Exhibit A.

14.     On information and belief, Naffa was the author of the 2011 Legal Services Agreement.

15.    Naffa presented the 2011 Legal Services Agreement to Plaintiff's personnel for approval and execution.

16.    The purported parties to the 2011 Legal Services Agreement as provided by Naffa were Plaintiff, with an address in the District of Columbia, and Defendant Naffa & Associates, LLP (referred to hereinafter as the "Firm") with an address in McLean, Virginia.

17.     The 2011 Legal Services Agreement refers to Naffa & Associates LLP as "The Firm" and the signature block for the Firm indicated that the agreement was executed on behalf of the Firm by "Joseph M. Naffa, Esq."

18.    The 2011 Legal Services Agreement states that "The Firm will perform the legal services called for under this agreement, keep the Military Office informed of progress and developments, and respond promptly to their inquiries and communications."

19.     Naffa's use of the business name Naffa & Associates, LLP was deceptive in that it suggested that Naffa was part of a larger practice and that Naffa employed at least two associates. Neither was true; Naffa was not in practice with any lawyers and he employed no associates.

20.    The 2011 Legal Services Agreement was for services to be delivered to the Military Office and to its personnel located in the District of Columbia.

21.    The 2011 Legal Services Agreement promised that the Firm would provide legal services to include "Providing legal advice: to the Military office & its staff on their legal rights and obligations."

22.    Rule 49(b)(2)(B) of the D.C. Court of Appeals (Unauthorized practice of law) defines "practice law" to include, inter alia, "preparing or expressing a legal opinion or giving legal advice."

6

23.     The Firm's agreement to provide Naffa's services to give legal advice both to the Military Office and its individual staff members, and Naffa's provision of such advice, constituted the unauthorized practice of law in the District of Columbia.

24.     The 2011 Legal Services Agreement promised that the Firm would provide legal services to include "Draft, review & negotiate contractual agreements relating to the military office (procurement, employment, termination, shipping, leasing, medical bills disputes, contractors, etc.)."

25.     Rule 49(b)(2)(A) of the D.C. Court of Appeals (Unauthorized practice of law) defines "practice law" to include, inter alia, "preparing any legal document, including a deed, mortgage, assignment, discharge, lease, trust instrument, will, codicil, or contract...."

26.     The Firm's agreement to provide Naffa's services to draft contracts, and Naffa's drafting of such contracts, constituted the unauthorized practice of law in the District of Columbia.

27.     The 2011 Legal Services Agreement promised that the Firm would provide legal services to include "Alternative dispute resolution services: participation in mediation, arbitration and similar non court-based dispute resolution services."

28.     Rule 49(c)(12) of the D.C. Court of Appeals (Unauthorized practice of law) provides that "A person who is not a D.C. bar member may provide legal services in or reasonably relating to a pending or potential arbitration, mediation of other alternative dispute resolution ('ADR') proceeding, and may hold out as authorized to provide those services," only if *inter alia* the person is admitted in another jurisdiction or court and does not otherwise practice law in the District of Columbia or hold out as authorized to do so.

29.     The Firm's agreement to provide Naffa's services to participate in mediations and arbitrations, and any such activities by Naffa, constituted the unauthorized practice of law in the

District of Columbia, as Naffa was (1) not admitted elsewhere and (2) affirmatively held himself out as authorized to practice law in the District of Columbia, and purported to engage in the practice of law in the District of Columbia

30.　　The 2011 Legal Services Agreement promised that the Firm would provide legal services to include "Providing legal Orientation (know your right) to the staff mainly regarding their immigration status and how to maintain a valid status according to United States laws and regulations."

31.　　Further, the 2011 Legal Services Agreement promised that the Firm would provide legal services to include "Dealing with the Government Agencies: The State Department, Department of Home Land Security, U.S. Citizenship and Immigration (USCIS), and Internal Revenue Service in any legal matter."

32.　　Under D.C. Court of Appeals Rule 49(c)(2), a person who is not a D.C. bar member may provide legal services relating to a government agency proceeding *only* when such services are authorized by statute or an agency rule.

33.　　Under USCIS rules, persons not admitted to practice law in at least one U.S. jurisdiction are generally forbidden from giving any advice on immigration, to any person.

34.　　Under USCIS rules, persons not admitted to practice law are permitted to give immigration law advice *only* when individually authorized by the USCIS and also acting under the authority of an organization specifically authorized by the USCIS to do so, an exception that does not apply to Defendants.

35.　　As provided in IRS Publication 947, "Practice Before the IRS and Power of Attorney," only attorneys admitted to practice in at least one U.S. jurisdiction, certified public accountants (CPAs), and enrolled agents may represent taxpayers before the IRS.

36.    The Firm's agreement to provide Naffa's services to deal with the IRS on any legal matter, and any such activities by Naffa, constituted the unauthorized practice of law in the District of Columbia, as Naffa was not admitted to practice law in any jurisdiction, nor was Naffa a CPA or enrolled agent.

37.    The Firm's agreement to provide Naffa's services to advise staff on their immigration status, and any such activities by Naffa, constituted the unauthorized practice of law in the District of Columbia, as Naffa was not admitted in any jurisdiction and was not otherwise authorized by USCIS to provide such advice.

38.    The legal services that Naffa contracted for and purported to provide to Plaintiff in the 2011 Contract included services that--under the rules of the District of Columbia Court of Appeals and the rules of practice established by federal agencies such as the IRS and USCIS--can *only* be provided by a licensed attorney in good standing.

39.    Naffa's agreement to provide, and actual provision of, legal services under the 2011 Contract constituted unauthorized practice of law under the rules of the District of Columbia Court of Appeals and the rules of practice established by federal agencies such as the IRS and USCIS.

40.    Plaintiff, and its personnel, were deceived by Naffa as to his qualifications, and would not have entered into the 2011 Legal Services Agreement if Plaintiff had known that Naffa was not qualified to provide the legal advice contracted for, and that Naffa could not lawfully provide all of the agreed services.

41.    Plaintiff was deceived and injured by Defendants' actions, whether or not Naffa was actually called on to provide all of the services covered by the 2011 Legal Services Agreement. Plaintiff was paying Naffa to be ready to provide those services and was relying on Naffa to advise Plaintiff relating to such services.

42.     The 2011 Legal Services Agreement was in force for three years, during which the Plaintiff paid a legal retainer of $45,000 per year to Naffa and/or his purported entities, for a total of $135,000.

43.     Naffa submitted a proposal to the Military Office dated March 3, 2014 (the "2014 Proposal") to supplant the 2011 Legal Services Agreement and increase the annual retainer fee. The Proposal was submitted on the letterhead of "Naffa & Associates" but now using a Washington, D.C. address. The 2014 Proposal is attached to this Complaint as Exhibit B.

44.     Like the 2011 Contract, the 2014 Proposal used "The Firm" to refer to Naffa & Associates.

45.     The 2014 Proposal stated that "NAFFA & ASSOCIATES is providing personalized, effective and efficient representation in the areas of Contract law, Employment law, Diplomatic law, Personal Injuries, Immigration law, International law, Criminal & Traffic laws, Business and Corporation laws, Estate planning. The firm is dedicated to providing outstanding representation and innovative solutions to satisfy client goals."

46.     The Plaintiff and its personnel were led to believe, based on the assertions in the 2014 Proposal, that Naffa operated a law firm in which more than one lawyer was available to provide a wide range of legal services.

47.     The 2014 Proposal defines "Scope of the Legal Services" as specifically including "2. Mediation & Arbitration Services - extends to the right to prepare and appear in Mediation and Arbitration proceedings…."

48.     The 2014 Proposal defines "Scope of the Legal Services" to specifically include "3. Preparation and certification of legal documents – such as; Contracts and Settlements

Agreements Including providing advice and the execution of various tasks necessary for the drawing up or certification of documents…." (sic)

49.     The 2014 Proposal defines "Scope of the Legal Services" to specifically include "4. <u>Legal advisory Services</u> to the Diplomats and the Embassy Staff at the Defense Office in on their legal rights and obligations and providing information of legal or law-related matters not elsewhere classified." (sic)

50.     The 2014 Proposal defines "Scope of the Legal Services" to specifically include "5. <u>Draft, Review and Negotiate</u> contractual agreements related to the Military Office at the Kuwait Embassy: Employment, Leasing, Medical Bills Disputes, Contractors, Tax, etc."

51.     The 2014 Proposal defines "Scope of the Legal Services" to specifically include "7. <u>Manage legal issues</u> between the Defense office at the Embassy of Kuwait and The State Department & U.S. Citizenship and Immigration (USCIS)."

52.     The 2014 Proposal defines "Scope of the Legal Services" to specifically include "8. <u>Conducting due diligence</u> related to regulatory issues, potential liabilities, the transferability of contracts, the status of core employees, insurance coverage, etc."

53.     The 2014 Proposal defines "Scope of the Legal Services" to specifically include "9. <u>Provide such other services</u> as may be reasonably requested and related by the Military office at the Embassy of Kuwait."

54.     The 2014 Proposal was accepted by the Plaintiff, resulting in an agreement that Defendants would continue to provide their purported legal services for an increased retainer fee.

55.     The legal services that Naffa contracted for and purported to provide to Plaintiff pursuant to the 2014 Proposal included services that--under the rules of the District of Columbia

Court of Appeals and the rules of practice established by federal agencies such as the IRS and USCIS--can *only* be provided by a licensed attorney in good standing.

56.     Naffa's agreement to provide, and actual provision of, legal services pursuant to the 2014 Proposal constituted unauthorized practice of law under the rules of the District of Columbia Court of Appeals and the rules of practice established by federal agencies such as the IRS and USCIS.

57.     Plaintiff, and its personnel, were deceived by Naffa as to his qualifications, and would not have agreed to continue retaining Naffa's "Firm" and increase its payments to Naffa for purported legal services pursuant to the 2014 Proposal, if Plaintiff knew that Naffa was not qualified to provide the legal advice contracted for, and that Naffa could not lawfully provide all of the agreed services.

58.     Plaintiff was deceived and injured by Defendants' actions, whether or not Naffa was actually called on to provide all of the services set forth in the 2014 Proposal. Plaintiff was paying Defendants a large annual retainer to be ready to provide those services and was relying on Naffa to advise Plaintiff relating to such services.

59.     Naffa purported to provide Plaintiff with legal services according to the 2014 Proposal and collected (via checks issued as payable to Naffa & Associates, LLP) a $65,000 retainer each year for 2014, 2015 and 2016, and an $85,000 retainer for 2017, for a total of $280,000.

60.     At some time before April 1, 2018, Naffa submitted a proposal to continue providing legal services to the Military Office at an annual retainer rate of $85,000.

61.     Plaintiff's authorized representative, the then-Military Attaché in the Military Office, signed a contract presented by Naffa dated April 1, 2018 (the "2018 Contract). The 2018 Contract is attached as Exhibit C.

62.     The 2018 Contract is headed by the words "International Compliance Group" and a logo.

63.     This use of "International Compliance Group" does not identify any specific legal person. There was no registration in the District of Columbia for the trade name "International Compliance Group," nor was there any "International Compliance Group" authorized to operate as a law firm or provide legal services in Washington D.C.

64.     Naffa's signature on the 2018 Contract is accompanied only by "Joseph M. Naffa, Esq. LLM, Ph.D. Legal Counsel" and the same address in the District of Columbia used by Naffa & Associates in the 2014 Proposal by that purported firm.

65.     Naffa's stated title of "Legal Counsel" constitutes an affirmative representation that he is a licensed attorney.

66.     There is no identification of (or reference to) International Compliance Group in the body of the contract or in Naffa's signature block.

67.     Plaintiff's Military Office understood at the time that the 2018 Contract was an update of its contract with Naffa & Associates LLP.

68.     Consistent with the Military Office's understanding of the ongoing relationship, under the 2018 Contract the Military Office paid an $85,000 retainer in each of 2018 and 2019, for a total of $170,000. These amounts were paid by the Military Office with checks, each made out to  Naffa & Associates, LLP.

69.     The checks issued to Naffa & Associates LLP under the 2018 Contract were accepted by Naffa and deposited without any objection or request to change the payee.

70.     In 2018, Plaintiff also paid Naffa & Associates LLP a total of $50,000 in added fees (in addition to the annual retainers otherwise paid) to act as Plaintiff's attorney-in-fact to purchase four houses in Virginia and prepare them for occupancy by embassy staff.

71.     Naffa accepted and negotiated all checks payable to Naffa & Associates LLP without complaint or request for change, and without ever suggesting that Plaintiff was under contract with or otherwise obligated to any other entity.

72.     The course of dealing of Plaintiff's Military Office and Naffa demonstrates that legal services were purportedly received from Naffa & Associates, LLP. All retainers and other invoices for legal services were paid by the Military Office by check made out to Naffa & Associates. LLP.

73.     Naffa's ongoing presentation to Plaintiff, throughout their relationship, of proposals and contracts coming from what appeared to be a multi-person law firm, and Naffa's actions in presenting himself as a licensed attorney (such as by signing proposals and contracts using "Esq." and "Legal Counsel" and by indicating to staff that he was an attorney) was intended to, and did, lead the previous Military Office administrations to believe that Naffa was qualified to provide legal services and that his work would comply with all applicable D.C. laws and regulations.

74.     Naffa affirmatively represented to Military Office staff during the 2011-2019 time period that he was a licensed attorney.

75.     Naffa was not licensed to provide the legal services that he contracted to provide in the District of Columbia under agreements with the Plaintiff.

76.     Naffa passed himself off as qualified to provide services that required a licensed attorney.

77.     The Military Office was staffed by non-lawyer diplomats who could not be expected to have expertise in local court and bar rules regarding the practice of law. The Military Office was deceived by Naffa's representations that he could lawfully provide the offered services.

78.     A subsequent administration of the Military Office received information at the end of 2019 suggesting that Naffa was not actually admitted to practice law in any U.S. jurisdiction.

79.     When his credentials came under scrutiny, Naffa was asked to document that he was a licensed attorney. Rather than admitting that he was unlicensed, Naffa attempted to continue his longstanding deception by submitting a copy of an American Bar Association membership card and several graduate school diplomas for Plaintiff's review.

80.     Naffa knew that he had not taken a bar exam and was not admitted to practice law. Naffa knew that none of the items he provided confirmed that he was a lawyer. Naffa's submission of these documents was intended to further deceive Plaintiff into continuing its relationship with Naffa.

81.     Plaintiff subsequently terminated its relationship with Naffa in view of his deceptive actions and his and lack of qualification to provide legal services.

82.     Plaintiff demanded that Defendants refund the legal fees paid to Defendants. Naffa, by counsel, refused to comply and claimed that he was acting under an "in-house counsel" exception set forth in Rule 49(c)(6) of the Rules of the Court of Appeals of the District of Columbia (unauthorized practice of law).

*83*.    Rule 49(c)(6) provides a narrow exception allowing a person who is not a D.C. bar member to provide legal advice to the person's *employer*.

*84.*     Rule 49(c)(6) explicitly states that "This Rule 49(c)(6) does not authorize a person to appear in any court, or in any department, agency, or office of the United States or the District of Columbia."

85.     The commentary to Rule 49(c)(6) explains that "The provision of advice, and only advice, to one's regular employer, where the employer does not reasonably expect that it is receiving advice from an authorized member of the D.C. Bar, and no third party is involved as a client or otherwise, is considered to be the employer's provision of advice to itself; and accordingly, it is not considered practicing law."

86.     The in-house counsel exception to the unauthorized practice of law in the District of Columbia applies only (1) in the case of a regular employee, not a person who provides services through a purported law firm, (2) where it has been made clear to the employer that the employee is not a lawyer, and (3) where no third party is involved as a client or otherwise.

87.     Plaintiff intended to, and understood that it was, entering into the Legal Services Agreement with a law firm in good standing, of which Defendant Naffa was a member.

88.     Plaintiff did not agree to, and did not in fact, ever hire Defendant Naffa personally.

89.     Defendant Naffa has never personally been an employee of the Plaintiff Ministry of Defence or its Military Office in Washington, D.C.

90.     The services purportedly provided to Plaintiff by Defendant Naffa were delivered under contracts with Defendant Naffa & Associates, LLP, as an independent contractor to the Military Office.

91.     As Plaintiff discovered much later, the firm of "Naffa & Associates, LLP" was not a legal entity. Naffa & Associates has never existed as a registered limited liability partnership (or

16

any other type of business organization) or a trade name in either the District of Columbia or in Virginia, nor was the purported firm registered with any bar association.

92.     Having knowingly entered into the Legal Services Agreement on behalf of an entity that had no separate existence and having purportedly performed under the contract and collected payments therefor made out to the nonexistent entity, Naffa is personally liable under the 2011 Legal Services Agreement, the 2014 contract, and the 2018 Contract.

93.     Having knowingly entered into the 2011 Legal Services Agreement, the 2014 contract, and the 2018 Contract on behalf of an entity that had no separate existence and having purportedly performed under the contract and collected payments made to the nonexistent entity, Naffa is estopped from claiming that he was an employee of the Military Office.

94.     On information and belief, during the period from 2011 to 2019, Naffa was actively engaged in representing other clients (in addition to the Military Office) as a purported attorney, including at least one other foreign government entity, further demonstrating that Naffa was not an in-house employee of the Military Office.

95.     Members of the Military Office believed that Naffa was a qualified attorney and he represented himself as such.

96.     Naffa's contractual responsibilities to provide legal services to the Military Office included interacting with third parties, government agencies, and alternative dispute resolution forums in a representative capacity, among others.

97.     Naffa contracted to provide services to the Plaintiff that were not limited to internal advice, and provided services that involved third parties and government agencies.

98.     Naffa knew or should have known that he was engaged in the unauthorized practice of law in the District of Columbia from at least 2011 to 2019 and that no exceptions under D.C. bar and D.C. Court of Appeals rules would authorize Naffa's purported legal practice.

99.     From 2011 to 2019, Naffa maintained a deception directed toward the Military Office by unlawfully providing what were purported to be legal services to the Military Office and collecting retainer fees for those services.

100.    Plaintiff's discovery of Naffa's longstanding deceptions about his credentials and licensure led to a preliminary audit of the housing purchase transactions managed by Naffa under the prior administration of the Military Office.

101.    In one or more of these housing purchase transactions, which Naffa concluded under a power of attorney granted by the Military Office, Naffa caused two sets of settlement statements to be prepared. One, that was submitted to the Plaintiff, showed a higher purchase price. The other that was actually implemented at closing showed a lower purchase price and included disbursement of cash to individuals including Naffa (personally) at settlement.

102.    When challenged regarding the housing transactions, Naffa arranged for at least some of the diverted funds to be returned to the Military Office.

103.    Plaintiff is presently unsure how much money was diverted, whether it has all been returned, and how long Naffa had use of diverted funds that were eventually returned.

104.    Naffa's diversion of funds belonging to Plaintiff to his own accounts were improper and provided Naffa with a financial benefit, to Plaintiff's financial detriment.

105.    Naffa was also involved in negotiating services agreements for the benefit of Kuwaiti citizens, with at least one organization in the medical industry.

106.     On information and belief, one or more medical industry organizations that entered into contracts with Plaintiff paid brokerage commissions that were not disclosed to Plaintiff.

107.     Plaintiff is undertaking a more detailed forensic investigation of the housing transactions and other business transactions handled by Naffa while in a position of trust.

**Claims for Relief**

**COUNT I:  BREACH OF CONTRACT**
**(AGAINST BOTH DEFENDANTS)**

108.     Plaintiff incorporates by reference the allegations of the Complaint contained in paragraphs 1 through 107, as if set forth herein.

109.     Defendant Naffa & Associates, LLP purported to enter contracts signed by Defendant Naffa to provide legal services, and accepted payments from Plaintiff for such legal services from 2011-2019.

110.     Naffa & Associates, LLP did not have a legal existence separate from Defendant Naffa.

111.     Defendant Naffa is personally liable for any breach of the express and implied contracts between Plaintiff and Defendant Naffa & Associates, LLP.

112.     Defendants, both individually and together, breached their express and implied contracts and obligations to Plaintiff under at least the 2011 Legal Services Agreement, the contract resulting from the 2014 Proposal, and the 2018 Contract by agreeing to provide legal services that Defendants were not licensed, authorized or qualified to provide.

113.     On information and belief, Defendants, both individually and together, breached their express and implied contracts and obligations to Plaintiff under at least the 2011 Legal Services Agreement, the contract resulting from the 2014 Proposal, and the 2018 Contract by

providing purported legal services that were not licensed, authorized, or accurate and caused Plaintiff to accept and rely on Defendants' unlicensed legal advice to its detriment.

114.    On information and belief, Defendants (individually and collectively) failed to deliver all of the legal services they agreed to provide under at least the 2011 Legal Services Agreement, the contract resulting from the 2014 Proposal, and the 2018 Contract, because Defendants lacked the licensure, qualifications, and knowledge to provide such services and were unable to do so when Plaintiff could have benefitted from such undelivered services.

115.    As a result of Defendants' material breach of contracts to provide legal services to Plaintiff, Plaintiff has suffered damages.

116.    Plaintiff's damages under the contracts include, but are not limited to, return of amounts paid for unlicensed services, compensatory damages, and litigation costs, in the amount of $635,000 and additional amounts to be proven at trial.

117.    To the extent Defendant Naffa & Associates, LLP is a legal entity separate from Defendant Naffa, Naffa & Associates, LLP is liable for the actions of Naffa while purportedly serving Plaintiff under its contract with Naffa & Associates, LLP.

118.    Defendants are jointly and severally liable for Plaintiffs' losses and injuries arising from Naffa's conduct.

**COUNT II:  FRAUD IN THE INDUCEMENT**
**(AGAINST BOTH DEFENDANTS)**

119.    Plaintiff incorporates by reference the allegations of the Complaint contained in paragraphs 1 through 115, as if set forth herein.

120.    Defendant Naffa knew at the time he induced Plaintiff to enter each of their contracts for Naffa's purported legal services that Naffa was not a licensed attorney in any U.S. jurisdiction.

121.    Defendant Naffa knew or should have known at the time he induced Plaintiff to enter each of their contracts for Naffa's purported legal services that Naffa was not qualified to provide one or more services defined in the contracts.

122.    Defendant Naffa knew or should have known at the time he induced Plaintiff to enter each of their contracts for Naffa's purported legal services that Naffa's provision of one or more services specified in such contracts would constitute unauthorized practice of law.

123.    Defendant Naffa knew at the time he induced Plaintiff to enter each of their contracts for Naffa's purported legal services that Naffa & Associates, LLP was not a legally established entity.

124.    Defendant Naffa knew at the time he induced Plaintiff to enter each contract for each of Naffa's purported legal services that Naffa was not in practice with any other attorneys and did not employ any associates.

125.    Defendant Naffa knew or should have known at the time he induced Plaintiff to enter into each contract for Naffa's purported legal services that under D.C. Court of Appeals Rule 49(a)(4) his use of terms like "Esq." and "Legal Counsel," Naffa's offers to provide what were clearly attorney services, and other statements and interactions with Plaintiff constituted knowingly and falsely holding himself out as authorized to practice law in the District of Columbia.

126.    Defendant Naffa took actions that falsely held himself out as competent, authorized, and available to practice law in the District of Columbia, including without limitation styling himself as "Esq." and "Legal Counsel" describing and suggesting extensive legal abilities, and negotiating contracts to provide legal services to Plaintiff, with the intent to deceive Plaintiff and its personnel.

127.     Defendant Naffa falsely presented himself as the operator of a purported law firm, Naffa & Associates, LLP, with the intent to deceive Plaintiff and its personnel into believing that Naffa was part of an established law firm and practiced with other attorneys, including at least two associates as indicated in the purported firm name.

128.     Naffa had a duty under District of Columbia law and under Rule 49 of the D.C. Court of Appeals (unauthorized practice of law) not to engage in the unauthorized practice of law.

129.     Naffa had a duty under District of Columbia law and under Rule 49 of the D.C. Court of Appeals (unauthorized practice of law) to avoid misleading communications and to affirmatively ensure that clients and potential clients were aware that Naffa was not a lawyer and was not qualified, available, or authorized to provide the services of a licensed attorney.

130.     The fact that Defendant Naffa was not licensed to practice law in any U.S. jurisdiction was a material fact, highly relevant to Plaintiff's decision to enter into contractual agreements to obtain Naffa's purported legal services.

131.     When inducing Plaintiff to enter contractual agreements for Naffa's purported legal services, Naffa failed to disclose the material fact that Naffa was not licensed to practice law in any U.S. jurisdiction.

132.     The fact that Defendant Naffa was not lawfully able to provide all of the legal services specified in the contracts Plaintiff signed for Naffa's services was a material fact, highly relevant to Plaintiff's decision to enter into contractual agreements to obtain Naffa's purported legal services.

133.     When inducing Plaintiff to enter contractual agreements for Naffa's purported legal services, Naffa failed to disclose the material fact that Naffa was not lawfully able to provide all of the legal services specified in those contracts.

22

134.    The fact that Defendant Naffa's provision of some of the legal services specified in the contracts Plaintiff signed for Naffa's services would constitute unauthorized practice of law was a material fact, highly relevant to Plaintiff's decision to enter into such contractual agreements for Naffa's purported legal services.

135.    When inducing Plaintiff to enter contractual agreements for Naffa's purported legal services, Naffa failed to disclose the material fact that Naffa's provision of some of the legal services specified in such contracts would constitute the unauthorized practice of law.

136.    Plaintiff relied, to its detriment, on Naffa's actions holding himself out as an attorney in choosing to contract for legal services from Naffa rather than forming a relationship with a qualified law firm.

137.    Plaintiff relied, to its detriment, on Naffa's express and implied assurances in legal service proposals and contracts submitted to Plaintiff and its personnel that Naffa was qualified, authorized and able to provide a broad range of legal services.

138.    As a result of Plaintiff's reliance on Naffa's affirmative misrepresentations, coupled with Naffa's failure to both accurately disclose material facts and dispel the incorrect impressions created by misleading communications, Plaintiff suffered financial and legal injury.

139.    Naffa induced Plaintiff to pay large sums to Naffa's purported law firm, in consideration of the advice and services of a fully qualified and licensed attorney. Plaintiff did not receive any lawful attorney services from Naffa, and therefore lost the value of its payments to Naffa.

140.    Plaintiff was induced by Naffa's misrepresentations to believe that its contracts with Naffa would and did yield legal guidance that was reliable and that was reasonable to follow. On information and belief, Plaintiff has been injured by receiving unqualified and improper advice

and acting on such advice, resulting in financial and/or legal position losses in one or more matters where Naffa engaged in the unauthorized practice of law.

141.    Plaintiff was induced by Naffa's misrepresentations to believe that Naffa was an attorney subject to strict rules of conduct, and as a result placed Naffa in a position of trust and allow him to handle financial transactions on behalf of Plaintiff, resulting in financial loss.

142.    Plaintiff's injuries resulting from Naffa's misrepresentations would not have occurred, but for Naffa's fraud in the inducement that led Plaintiff to enter contractual agreements for services and then to rely on Naffa's expertise and integrity.

143.    Plaintiff is entitled to rescission of all contracts that it was induced to enter by Naffa's affirmative misrepresentations, and Naffa's failures to disclose material facts when Naffa had a duty to disclose such facts.

144.    Defendants were not legally entitled to receive and retain payments from Plaintiff for purported legal services that were provided unlawfully.

145.    Any services provided by Defendants, when engaging in the unauthorized practice of law and unlawfully contracting for and providing purported legal services to Plaintiff, had no monetary value.

146.    Plaintiff is entitled to the return of all funds paid to Defendants for such services, and to further damages as may be proven at trial.

147.    To the extent Defendant Naffa & Associates, LLP is a legal entity separate from Defendant Naffa, Naffa & Associates, LLP is liable for the actions of Naffa while purportedly serving Plaintiff under contract with Naffa & Associates, LLP.

148.    Defendants are jointly and severally liable for Plaintiffs' losses and injuries arising from Naffa's deceptive conduct.

## COUNT III:  BREACH OF DUTIES TO PLAINTIFF
### (AGAINST BOTH DEFENDANTS)

149.    Plaintiff incorporates by reference the allegations of the Complaint contained in paragraphs 1 through 145, as if set forth herein.

150.    Upon accepting authority to arrange contracts and manage financial transactions for Plaintiff, the Defendants had an implied duty of good faith and fair dealing toward Plaintiff in negotiating and managing such contracts and transactions.

151.    Upon accepting a power of attorney to act on Plaintiff's behalf in contracting for the purchase and improvement of four houses in Virginia, and operating under such power of attorney, Defendant Naffa had a fiduciary duty to protect Plaintiff's interests in those transactions.

152.    Naffa affirmatively and intentionally misrepresented that he was a licensed attorney and therefore subject to the Rules of Professional Conduct of the D.C. and/or other bar associations. Naffa further failed to meet his obligations to dispel any misunderstanding on that point. Plaintiff relied to its detriment on its understanding that Naffa was subject to these ethical requirements in his dealings with Plaintiff, and Naffa is estopped from claiming otherwise.

153.    By providing real estate settlement documents to Plaintiff that did not accurately show the distribution of funds in Plaintiff's purchase of property, and by personally receiving and holding funds that Plaintiff had not authorized Naffa to receive, Naffa breached his duty of fair dealing to Plaintiff.

154.    By providing real estate settlement documents to Plaintiff that did not accurately show the distribution of funds in Plaintiff's purchase of property, and by personally receiving and holding funds that Plaintiff had not authorized Naffa to receive, Naffa breached his fiduciary duty to Plaintiff.

155.     By providing real estate settlement documents to Plaintiff that did not accurately show the distribution of funds in Plaintiff's purchase of property, and by personally receiving and holding funds that Plaintiff had not authorized Naffa to receive, Naffa breached duties owed to Plaintiff under the D.C. bar Rules of Professional Conduct.

156.     Naffa breached his fiduciary duties, his express and implied duties of good faith and fair dealing, and his duties owed to Plaintiff under the D.C. bar Rules of Professional Conduct by engaging in self-dealing,

157.     On information and belief, Naffa may have engaged in other deceptive and/or self-dealing conduct in violation of his duties to Plaintiff, as may be determined during discovery and proven at trial.

158.     Plaintiff was damaged by Naffa's breach of duties toward Plaintiff, in an amount to be determined during discovery and at trial.

159.     To the extent Defendant Naffa & Associates, LLP is a legal entity separate from Defendant Naffa, Naffa & Associates, LLP is liable for the actions of Naffa while purportedly serving Plaintiff under contract with Naffa & Associates, LLP.

160.     Defendants are jointly and severally liable for Plaintiffs' losses and injuries arising from Naffa's breach of duties owed to Plaintiff.


### COUNT IV:  CONVERSION
### (AGAINST BOTH DEFENDANTS)

161.     Plaintiff incorporates by reference the allegations of the Complaint contained in paragraphs 1 through 155, as if set forth herein.

162.     By providing real estate settlement documents to Plaintiff that did not accurately show the distribution of funds in Plaintiff's purchase of property, and by personally receiving and

holding funds that Plaintiff had not authorized Naffa to take possession of, Naffa unlawfully exercised ownership or control over funds that were the personal property of Plaintiff.

163.    Naffa's diversion of funds to his own accounts while managing and concluding housing purchase transactions was intentional and had the effect of denying or repudiating Plaintiff's rights to those funds.

164.    Plaintiff is entitled to compensation for the value of any diverted funds that have not been returned to Plaintiff, and to interest on any diverted funds that were eventually returned, for the period when they were unlawfully held by Defendant Naffa.

165.    Plaintiff is entitled to punitive damages in an amount to be determined at trial.

166.    To the extent Defendant Naffa & Associates, LLP is a legal entity separate from Defendant Naffa, Naffa & Associates, LLP is liable for the actions of Naffa while purportedly serving Plaintiff under contract with Naffa & Associates, LLP.

167.    Defendants are jointly and severally liable for Plaintiffs' losses and injuries arising from the conversion of Plaintiff's property.


(remainder of page intentionally left blank)

## JURY DEMAND

Plaintiff hereby demands a trial by jury on the claims set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment as follows:

1. Declaring that Defendants breached their contractual obligations to the Plaintiff;

2. Declaring that Defendant Naffa deceptively induced Plaintiff to enter into contracts with his alter-ego, Naffa & Associates, LLP, for his individual benefit;

3. Granting rescission of all contracts between Plaintiff (on the one hand) and on the other hand, Defendant Naffa and all entities under which he purports to have contracted with Plaintiff;

4. Declaring that Defendant Naffa & Associates, LLP constitutes a sole proprietorship operated by Defendant Naffa and that Naffa is personally liable for all actions and debts of Defendant Naffa & Associates, LLP in this matter;

5. Entering judgment awarding compensatory damages in favor of the Plaintiff against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, for $635,000 and additional amounts as proven at trial;

6. For punitive damages;

7. For pre- and post-judgment interest;

8. For equitable relief, including a judicial determination of the rights and responsibilities of the parties;

9. For attorneys' fees;

10.    For costs of suit; and

11.    For such other and further relief as may be deemed just and proper.

Respectfully submitted,

**THE MINISTRY OF DEFENCE OF THE STATE OF KUWAIT**

By its Counsel:

*/s/ Evan R. Smith*

Evan R. Smith
Virginia Bar No. 31425
Attorney for Plaintiff

**COGENT LAW GROUP LLP**
1875 K St. NW 4th Flr
Washington, DC 20006
Office: (202)644-8880
Fax: (202) 644-8880
esmith@cogentlaw.co

29