UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| MINISTRY OF DEFENCE OF THE STATE OF KUWAIT, and MINISTRY OF HEALTH OF THE STATE OF KUWAIT, | Civil Action No. 1:22-cv-01270 |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| vs. | |
| JOSEPH MOHAMMAD NAFFA, and NAFFA & ASSOCIATES, LLP, | |
| Defendants. | |

Defendants Joseph M. Naffa and Naffa & Associates, LLP respectfully submit this

Memorandum of Law in Support of their Motion to Dismiss the First Amended Complaint filed

by Plaintiffs Ministry of Defence of the State of Kuwait ("Ministry of Defence") and Ministry of

Health of the State of Kuwait ("Ministry of Health").

## <u>INTRODUCTION</u>

This lawsuit is the latest in a series of vindictive efforts by the Plaintiffs to punish Mr.

Naffa for a dispute with his superiors at the Embassy of the State of Kuwait ("Embassy").

Plaintiffs Ministry of Defence and Ministry of Health conduct business in the United States

through the "Kuwait Military Office" and the "Kuwait Health Office," respectively, which are

"associated with the Kuwait Embassy in Washington, D.C." First Am. Compl. 2 ("Am.

Compl."). For nearly a decade, Mr. Naffa was employed as a legal advisor by the Kuwait

Military Office and the Kuwait Health Office. In November 2019, as the parties' dispute

escalated, the Military Office terminated Mr. Naffa and demanded that he return all the money

that it had paid him over the course of their long working relationship. The Health Office also let Mr. Naffa's contract expire in 2020.

In January 2021, the Military Office filed a complaint asking the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law ("UPL Committee") to find that Mr. Naffa's work for the Military Office and the Health Office had constituted the unauthorized practice of law in D.C. In a careful, six-page opinion provided to both law firms then representing the Military Office, the UPL Committee disagreed, finding that Mr. Naffa was fully qualified to perform the services that he provided under his contracts.

On November 15, 2022, the Ministry of Defence served Defendants with a twenty-nine-page Complaint in this Court reframing the same "unauthorized practice" allegations as breach-of-contract and fraud-in-the-inducement claims. *That Complaint, however, inexplicably failed to inform this Court of D.C.'s UPL Committee's authoritative decision*. Defendants were thus obliged to do the Ministry of Defence's work for it, flagging the existence of the UPL Committee's decision and explaining its legal import in a Motion to Dismiss filed on December 6, 2022. Following an Opposition by the Ministry of Defence and Reply by Defendants, Defendants' Motion to Dismiss was fully briefed as of December 22 and set for a hearing on January 6, 2023.

Notably, however, the Ministry of Defence's Opposition did not defend their original Complaint. Instead, Plaintiffs also filed a motion proffering a new First Amended Complaint ("Amended Complaint") adding the Ministry of Health as a Plaintiff. The Amended Complaint seeks to deflect attention from their failure to properly research the facts and law before filing their original Complaint with sixty-four pages comprising 366 numbered paragraphs that are repetitive and meandering. *See, e.g.*, Am. Compl. ¶¶ 96-97 (repeating the same allegation

regarding knowing performance and acceptance of payment); *id.* ¶¶ 172-73 (same); *id.* ¶¶ 195-97 (restating essentially the same allegation regarding how the contracts with the Military Office were breached); *id.* ¶¶ 83-85, 164-66 (repeating allegations regarding practice before U.S. Citizenship and Immigration Services within the "Factual Allegations" section); *id.* ¶¶ 190-91, 231-32, 255-56, 276-77, 294-95, 336-37, 358-59 (repeating allegations regarding duties to disclose and investigate in each count except Count IV).

Although this Court granted Plaintiffs' Motion to Amend, length and repetition cannot cure the legal deficiencies in Plaintiffs' case. As set forth below, the Amended Complaint should be dismissed because it 1) still fails to plead critical elements of Plaintiffs' claims; and 2) fails to meet the applicable statutes of limitations as to nearly all claims, including those of both the original Plaintiff (the Ministry of Defence) and the new one (the Ministry of Health).

Unfortunately, however, Plaintiffs need not prevail in this lawsuit to achieve their goal of punishing Mr. Naffa for daring to disagree with his superiors. Plaintiffs benefit from essentially unlimited resources, since Kuwait is a country in the top third of world GDPs. Mr. Naffa, in contrast, is a middle-class individual with a large family to support and very limited resources. Plaintiffs accordingly seek only to string this lawsuit out long enough for Mr. Naffa to experience financial hardship from which he cannot recover. By first forcing Defendants to respond to a lengthy but frivolous Complaint that Plaintiffs did not even defend, and then substituting an even lengthier Amended Complaint with claims that could and should have been included in the first one, Plaintiffs are well on the way to achieving their goal.

For the reasons set forth below, this Court should expeditiously dismiss Plaintiffs' Amended Complaint.

# BACKGROUND

Joseph M. Naffa is a United States citizen.  He has the equivalent of a Ph.D. from the School of Advanced Legal Studies at the University of London, as well as dual LL.M. degrees in "Law and Government" and "International Legal Studies" from American University, although he is not a member of a U.S. bar.  Mr. Naffa is fluent in English and Arabic.

In April of 2011, the Military Office entered an agreement with Mr. Naffa under which he agreed to provide it legal services.[1]  The Military Office agreed to pay Mr. Naffa an "annual retainer" of $45,000 plus expenses.  Mr. Naffa entered into this agreement on behalf of an entity called "Naffa & Associates, LLP" and signed the agreement as "Joseph M. Naffa, Esq."  The 2011 agreement identified the legal services that Mr. Naffa would provide, including:

- Providing legal advice to the Military Office and staff regarding their rights and responsibilities;
- Drafting, reviewing, and negotiating contractual agreements;
- Participating in mediation, arbitration, and similar non-court-based alternative dispute resolution proceedings;
- Acting as an intermediary on the Military Office's behalf with U.S. government agencies; and
- Conducting due diligence relating to regulatory issues, potential liabilities, insurance coverage, etc.

Am. Compl. Ex. B, at 1.

The Military Office renegotiated its agreement with Mr. Naffa in 2014.  The terms remained largely the same, but the Military Office increased Mr. Naffa's annual retainer to $65,000.  *See* Am. Compl. Ex. C.  The parties entered a third similar agreement in spring 2018, this time between the Military Office and Mr. Naffa's company International Compliance Group.  The Military Office increased Mr. Naffa's annual retainer to $85,000.  *See* Am. Compl. Ex. D.

---

[1] Plaintiffs filed this initial agreement and similar successor agreements between the parties as Exhibits B-D to the Amended Complaint.

The 2018 agreement added the requirement that Mr. Naffa be "[o]n call at any time in case if needed for any legal related matter," and also provided that Mr. Naffa would manage "court/s litigation in 50 States with local attorneys." *Id.* at 1. None of the agreements contained any requirement or otherwise indicated any expectation that Mr. Naffa was or would be a member of the D.C. Bar or any U.S. bar.

During the same period, the Health Office entered into a very similar arrangement with Mr. Naffa. The scope of legal services that Mr. Naffa agreed to provide the Health Office was practically the same as those he agreed to provide the Military Office in 2014. *Compare* Am. Compl. Ex. E, at 1-2, *with* Am. Compl. Ex. C, at 1-2. Like the Military Office, the Health Office initially agreed to pay Mr. Naffa an "annual retainer fee" of $45,000. Am. Compl. Ex. E, at 2. The initial agreement had an effective date of April 2, 2012, and was signed by Mr. Naffa as Joseph M. Naffa on behalf of "Naffa & Associates, P.C." *Id.* In 2017, the parties formally entered into a second agreement, with Mr. Naffa signing on behalf of "Naffa & Associates, LLP," at a $75,000 per-year rate. *See* Am. Compl. Ex. F. This agreement was comparable to Mr. Naffa's 2018 agreement with the Military Office in terms of the scope of services provided. *Compare id.* at 1, *with* Am. Compl. Ex. D, at 1. Like Mr. Naffa's agreements with the Military Office, neither the 2012 agreement nor the 2017 agreement with the Health Office required or reflected an expectation that Mr. Naffa was or would be a member of any U.S. bar, or that he was or would be part of a multi-member firm.

In addition to the duties performed under these contracts, the Amended Complaint indicates that Mr. Naffa assisted with the purchase of four residences for occupancy by Embassy of Kuwait staff for a fee of $50,000. Am. Compl. ¶ 72. The Amended Complaint contains virtually no information about these purchases—not dates, or addresses, or purchase amounts, or

even parties to the transactions.  Fairfax County public records indicate four houses owned by the "Embassy of the State of Kuwait," as to which Mr. Naffa has indicated he provided assistance.  *See, e.g.*, 7820 Swinks Mill Ct. Fairfax County Property Records (Ex. A), available at https://icare.fairfaxcounty.gov/ffxcare/search/commonsearch.aspx?mode=address (last visited Jan. 13, 2023).  Again, however, the Amended Complaint does not indicate whether these are the properties at issue here, or what other properties might be.

In the fall of 2018, relations began to sour between Mr. Naffa and new leadership in the Military Office.  A dispute arose between Mr. Naffa and his superiors relating to criminal allegations against two Kuwaiti citizens in the United States and, in November 2019, the Military Office terminated Mr. Naffa.  It then claimed to have been unaware that he was not barred in D.C. at the time that he was hired and over the many years working with him since.  The Military Office asked Mr. Naffa to return all the funds it had ever paid him.  Mr. Naffa refused.  Soon after, in January 2020, the Health Office informed Mr. Naffa that it would not renew his contract when it expired on April 1, 2020.

In January 2021, the Military Office asked the D.C. UPL Committee to find that Mr. Naffa had been engaged in the unauthorized practice of law while working for the Military Office and the Health Office.  On November 11, 2021, the UPL Committee issued a thorough, six-page decision unambiguously concluding: "Mr. Naffa did not engage in the unauthorized practice of law while working as an internal counsel from 2011 to 2019 for two different offices within the Kuwait Embassy . . . ."  Letter from Geoffrey M. Klineberg, Member, UPL Committee, to Duane R. Demers & John Hermina, at 6 (Nov. 11, 2021) (Ex. B).  Attorneys representing the Military Office at two different firms received a copy of this decision.  *See id.* at 1.

The UPL Committee found that the critical portion of D.C.'s Rule 49—which Plaintiffs invoke repeatedly—is subsection (c)(6), an exception that permits non-lawyers to serve as internal counsel to a regular employer so long as the employer does not reasonably expect that it is receiving advice from a member of the D.C. Bar. *See id.* at 3. The UPL Committee also disagreed with the Military Office's claims—repeated in the Amended Complaint—that Mr. Naffa violated the "'holding out' prohibition in Rule 49." *Id.* at 3 n.6. Finally, the UPL Committee expressly rejected the Military Office's contention that it had reasonably expected that Mr. Naffa was a member of the D.C. Bar. The Committee pointed out that Mr. Naffa provided a letter from the individual who originally hired him at the Military Office, General Adel Al Saeed, stating:

> I was fully aware of Mr. Naffa's qualifications and . . . . we didn't require him to be licensed to practice in the District of Columbia . . . or any other since the scope of work covers all 50 States. Mr. Naffa made it clear that he'll need to coordinate with local third-party attorneys according to the local jurisdictions and matter of expertise. . . . Mr. Naffa never acted as a third party, and he always handled all of our issues as an internal member of the Kuwait Military Office.

*Id.* at 5 (third alteration in original) (citation omitted). The UPL Committee held that "it appears that, starting in 2011, Mr. Naffa's employer was aware of his credentials and concluded that his services were sufficiently valuable that it renewed his contract two separate times." *Id.* at 6. The Amended Complaint does not report any effort by the Ministry of Defence or the Military Office to contest the UPL Committee's decision, to seek reconsideration, or to seek review by the D.C. Court of Appeals itself.

## **LEGAL STANDARD**

Under a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts well-pleaded factual allegations as true but should disregard conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, "[f]actual allegations must be enough to raise a right to relief

above the speculative level on the assumption that all of the complaint's allegations are true."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  In deciding a motion under Rule 12(b)(6),

the Court may also examine "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 322 (2007).

## ARGUMENT

### I. PLAINTIFFS' BREACH-OF-CONTRACT, PROMISSORY ESTOPPEL, FRAUD, AND BREACH-OF-DUTIES CLAIMS ARE ALL BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

Defendants' initial Motion to Dismiss incorrectly relied on the District of Columbia's

statutes of limitations.  That was incorrect because the Supreme Court of Virginia has explained

that, in Virginia, "matters of procedure are governed by the situs of the proceedings" and statutes

of limitations are procedural rather than substantive.  *See Hansen v. Stanley Martin Cos.*, 585

S.E.2d 567, 571 (Va. 2003).  Virginia's statutes of limitations accordingly apply.

#### A. Plaintiffs' Breach-of-Contract Claims Are Barred by the Statute of Limitations Because Plaintiffs Knew or Should Have Known of Their Claims More Than a Decade Ago.

Virginia has a five-year statute of limitations for breach of contract on a written contract.

Va. Code Ann. § 8.01-246(2) (West 2019).  Here, Plaintiffs have attached the written contracts

to the Amended Complaint.  *See* Am. Compl. Exs. B-F.  Virginia procedural law further

specifies that "[i]n every action for which a limitation period is prescribed, the right of action

shall be deemed to accrue and the prescribed limitation period shall begin to run from the

date . . . when the breach of contract occurs in actions ex contractu and not when the resulting

damage is discovered."  *Id.* § 8.01-230 (West 1996).  As set forth above, the contracts here were

entered into between 2011 and 2018.  Plaintiffs' allegations here are that Mr. Naffa was in

breach from the moment each contract was entered.  The statute of limitations on Plaintiffs'

contract claims accordingly ran no later than April 1, 2022, *see* Am. Compl. Ex. F, at 1 (listing the effective date of the Ministry of Health's last agreement with Mr. Naffa as April 1, 2017), with the exception of Mr. Naffa's last contract with the Ministry of Defence.[2]

The Amended Complaint appears to suggest that the statute of limitations was tolled because the Military Office allegedly did not discover Mr. Naffa's purported "longstanding deceptions" until 2019,[3] Am. Compl. 4, ¶ 103, while the Health Office supposedly remained in the dark until 2020. Am. Compl. 6. If that is what Plaintiffs intend to argue, it is flatly incorrect. As set forth above, Section 8.01-230 expressly states that Virginia does not follow the "discovery" rule for breach-of-contract actions. And the Virginia courts have repeatedly so held: "Virginia has never adopted the so called 'discovery rule' for purposes of determining when a cause of action accrues for . . . breach of contract . . ." *Vaught v. Toothman,* 27 Va. Cir. 214, 218 (Va. Cir. Ct. 1992) (citing *Va. Mil. Inst. v. King*, 232 S.E.2d 895 (Va. 1977)); *CPM Virginia, LLC. v. Virginia Elec. & Power Co.*, Civil No. CL16-3134, 2017 WL 10966301, at *4 (Va. Cir. Ct. July 14, 2017) (citation omitted); *see also Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1284-85 (E.D. Mich. 2021) (noting that the discovery rule theory is not available under Virginia law and dismissing implied warranty claim as time barred).

---

[2] Even if the breach-of-contract claim related to the 2018 agreement between the Ministry of Defence and Mr. Naffa is not barred by the statute of limitations, it should be dismissed on the merits because, as explained below, Plaintiffs do not properly plead breach or damages. *See* Part II.

[3] Specifically, the Ministry of Defence learned no later than November 2019 that Mr. Naffa was not licensed in any U.S. jurisdiction. *See* Ex. B at 3 (noting that the Military Office said in November 2019 that "it had 'recently learned'" that Mr. Naffa was not licensed in any U.S. jurisdiction); Am. Compl. 4, ¶¶ 91, 275 (describing when the Military Office made this discovery as "late in 2019" or the "end of 2019").

To toll a statute of limitations under Virginia law, a plaintiff must allege an *affirmative* misrepresentation intended to prevent a plaintiff from filing an action. *See, e.g.*, *Evans v. Trinity Indus., Inc.*, 137 F. Supp. 3d 877, 882 (E.D. Va. 2015) (plaintiff "must establish that the defendant undertook an *affirmative act* designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action" (citation omitted)). Such affirmative acts "must be of that character which involves moral turpitude, and must [actually] have the effect of debarring or deterring the plaintiff from his action." *Newman v. Walker,* 618 S.E.2d 336, 339 (Va. 2005) (citation omitted). "Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action." *Culpeper Nat'l Bank, Inc. v. Tidewater Improvement Co.*, 89 S.E. 118, 121 (1916) (quoting 2 H.G. Wood & Dewitt C. Moore, Limitation of Actions at Law and in Equity 1422 (4th ed. 1916)). Such obstruction "must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence." *Id.* (quoting Wood & Moore, *supra*, at 1422).

Here, Plaintiffs do not allege that Defendants engaged in any affirmative acts intended to obstruct Plaintiffs' right to file their action. Plaintiffs plead that, *for nine years*, they labored under the mistaken impression that Mr. Naffa was part of an entire law firm of D.C.-barred lawyers. But they do not plead any "trick or artifice" by Mr. Naffa—they do not suggest, for example, that he put together a website designed to perpetuate the notion that he was a law firm, or provided fake credentials suggesting bar membership, or did anything else to "hinder" Plaintiffs from discovering that Mr. Naffa was exactly what he is—a highly educated legal expert who was, according to the D.C. UPL Committee, qualified to provide the services Plaintiffs sought but was neither a law firm nor barred in D.C. In short, under Virginia law,

Plaintiffs' protestations that it took them nearly a decade to find out things that could have been determined in mere moments are simply irrelevant—Virginia does not follow the discovery rule in contract cases and Plaintiffs' contracts claims are therefore time-barred.

But even if the discovery rule were to apply here, the statute of limitations still would not be tolled. In "discovery" jurisdictions, accrual occurs "from the moment a party has either 'actual notice of her cause of action,' or is deemed to be on 'inquiry notice' by failing to 'act reasonably under the circumstances in investigating matters affecting her affairs,' where 'such an investigation, if conducted, would have led to actual notice.'" *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011) (quoting *Harris v. Ladner*, 828 A.2d 203, 205-06 (D.C. 2003)). It is, moreover, *Plaintiffs'* burden to "prove that, despite the exercise of due diligence, [they] could not have discovered the alleged fraud" within the limitations period. *Dunlap v. Texas Guaranteed*, 590 F. App'x 244, 244 (4th Cir. 2015) (per curiam) (quoting *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 839 (Va. 2008)). Under this rule, Plaintiffs' claims would be barred as well.[4]

The "discovery" standard is one of *objective* reasonableness, and Plaintiffs plainly did not exercise the prudence to be expected of a reasonable person here. Plaintiffs' core claim is that it was so critical for Mr. Naffa to be barred in the U.S. that all the work that he did from 2011 to 2019—which was evidently satisfactory given his repeated contract renewals and raises by both Offices—was rendered utterly valueless by his lack of a U.S. bar membership. But whether Mr. Naffa was a member of the D.C. Bar is a matter of public record. A near-instant Web search confirms that there are no "Naffas" who are members of the D.C. Bar today, and presumably that was also the case in 2011. *See Searchable Member Directory*, DC Bar, https://my.dcbar.org/

---

[4] In a "discovery" jurisdiction with a statute of limitations shorter than five years, even the claim related to the 2018 agreement between the Ministry of Defence and Mr. Naffa would be barred.

MemberDirectoryPage (last visited Dec. 1, 2022). And an equally swift search would also confirm that Mr. Naffa is not part of a law firm. Thus, even if it were true that Plaintiffs did not know of Mr. Naffa's status when it repeatedly contracted with him for legal services, reasonableness in this situation mandates the seconds of investigation that "would have led to actual notice" of the alleged breach, *Medhin*, 26 A.3d at 310 (citation omitted), and Plaintiffs' claims would therefore be time-barred even in a "discovery" jurisdiction.[5]

### B. Plaintiffs Promissory Estoppel Claims Are Barred by Section 8.01-247 and the Applicable Statute of Limitations.

As set forth above, Virginia's procedural rules apply here. *See Hansen*, 585 S.E.2d at 571. Section 8.01-247 of the Virginia Code provides that "[n]o action shall be maintained on any contract which is governed by the law of another state or country if the right of action thereon is barred either by the laws of such state or country or of this Commonwealth." Because Virginia does not permit promissory estoppel claims, *see W.J. Scafer Assoc's, Inc. v. Cordant, Inc.*, 493 S.E.2d 512, 516 (Va. 1997), Plaintiffs' promissory estoppel claims appear inconsistent with this provision.

---

[5] The Ministry of Defence's awareness that Mr. Naffa was not licensed in the United States is imputed to the Ministry of Health. Under principles of agency law, the collective knowledge of a corporation's employees is imputed to the corporation, even though a corporation may contain different departments or divisions. *See, e.g.*, *New York v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 669-70 (S.D.N.Y. 2017), *aff'd*, 942 F.3d 554 (2d Cir. 2019). The Military Office and the Health Office are both part of the Embassy. The agreements between both Offices and Mr. Naffa are signed on behalf of the Embassy. Am. Compl. Ex. B, at 2 (signed by "Military Office / Embassy of Kuwait"); *id.* Ex. D, at 2 (signed by "Kuwait Military Attache[,] Kuwait Embassy – Military Office"); *id.* Ex. E, at 2 (signed by "Health Office Attaché[,] Embassy of Kuwait"). And the State Department Diplomatic List includes both military and health attachés among the members of the Embassy's diplomatic staff. *Diplomatic List*, U.S. Dep't of State 71 (2020), https://2017-2021.state.gov/wp-content/uploads/2020/10/Fall-2020-Diplomatic-List1.pdf. Thus, there is no organizational difference between the Plaintiffs, and *both* were aware or should have been aware of Mr. Naffa's alleged deception as of 2011 or 2012—more than a decade before the original Complaint and the Amended Complaint were filed.

If these causes of action that Virginia does not permit are cognizable here, the question becomes how Virginia's statutes of limitations would or even could apply. Virginia has no specific statute of limitations for promissory estoppel *because* it does not allow the cause of action. But jurisdictions that do permit such claims appear to apply their statute of limitations for actions on implied contracts, consistent with our suggestion directly above that this count is effectively "maintained on a[] contract." *See, e.g.*, *Cal. Surgical Inst., Inc. v. Aetna Life and Cas. Berm. Ltd.*, Case No. SACV 18-02157JVS(DFMx), 2020 WL 7414748, at *14 (C.D. Cal. Oct. 20, 2020) (applying California's two-year statute of limitations for oral contracts to promissory estoppel claim). If Plaintiffs' promissory estoppel claims are cognizable at all, then, they are presumably subject to Virginia's three-year limitation for actions based on unwritten contracts. Va. Code Ann. § 8.01-246(4) (West 2019).

If so, the same analysis applicable to Plaintiffs' contract claims would apply here as well. We will not repeat those arguments in detail, but the core points are 1) the conduct at issue occurred approximately a decade ago; and 2) Virginia is not a "discovery" jurisdiction, so the statute of limitations cannot be tolled. Plaintiffs' promissory estoppel claims are thus also time-barred.

### C. Plaintiffs' Fraud-in-the-Inducement Claims Are Barred by the Two-Year Statute of Limitations, Even on *Plaintiffs'* Theory That Their Claims Were Not "Discovered" Until 2019 and 2020.

Defendants' initial Motion to Dismiss incorrectly relied on the District of Columbia's three-year statute of limitations for fraud in the inducement. The applicable "statute of limitations for fraud actions in Virginia, including Fraud in the Inducement, is two years 'after the cause of action accrues.'" *Racklin v. Zeta Glob. Corp.*, Case No. 1:21-cv-1035 (AJT/JFA), 2022 WL 4240885, at *7 (E.D. Va. Sept. 14, 2022) (quoting Va. Code § 8.01-243(A)); *see also*

*McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 806-07 (E.D. Va. 2017) (applying Virginia's two-year statute of limitation to a fraud-in-the-inducement claim).

Virginia does recognize the "discovery" rule for fraud causes of action; an action for "fraud accrues when the fraud is discovered, or when, by the exercise of due diligence, it should have been discovered." *Eshbaugh v. Amoco Oil Co.*, 360 S.E.2d 350, 351 (Va. 1987) (citation omitted). As discussed above, Plaintiffs, through the exercise of due diligence, should have discovered any claimed misrepresentations many years ago.

In any event, however, even on Plaintiffs' theory of when they "discovered" the purported fraud, these claims are plainly time-barred. Plaintiffs allege that the Military Office discovered Mr. Naffa's alleged deceptions in 2019. Am. Compl. 4, ¶ 103. And, "[i]n 2020, the Health Office learned that Naffa was not a lawyer and did not renew his contract." Am. Compl. 6. Since the renewal date was April 1, 2020, *see* Am. Compl. Ex. F, at 2, the Health Office necessarily knew by then. These "discovery" accrual dates are well over two years before the filing of the both the original Complaint and the Amended Complaint, and Plaintiffs' fraud claims are therefore barred by the statute of limitations.

### D. Plaintiffs' Breach of Fiduciary Duty Count Is Also Barred by the Statute of Limitations.

The statute of limitations for breach of fiduciary duty in Virginia is also two years. *See* Va. Code. Ann. § 8.01-248 (West 1995); *Rossman v. Lazarus*, No. 1:08cv316 (JCC), 2008 WL 4181195, at *5 (E.D. Va. Sept. 3, 2008). Plaintiffs plead that they discovered "these breaches of duty . . . sometime in 2020, less than three years before the filing of this action." Am. Compl. ¶ 254. Because the Virginia statute of limitations is *two* years, Plaintiffs' breach of fiduciary duty claim (Count III) is also barred by the statute of limitations.

## II. PLAINTIFFS' CONTRACT CLAIMS DO NOT PROPERLY PLEAD THE ELEMENTS OF EITHER BREACH OR DAMAGES, AND THOSE CLAIMS SHOULD ACCORDINGLY BE DISMISSED.

The substance of Plaintiffs' contract claims is governed by "the law of the place of performance." *Black v. Powers*, 628 S.E.2d 546, 554 & n.8 (Va. Ct. App. 2006) (quoting *Arkla Lumber & Mfg. Co. v. W. Va. Timber Co.*, 132 S.E. 840, 842 (Va. Ct. App. 1926)). D.C. law accordingly controls as to the required elements of Plaintiffs' claims. In D.C., a breach-of-contract claim requires the plaintiff to establish "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Plaintiffs have failed to properly plead either breach or damages.

### A. Plaintiffs Have Not Properly Pleaded a Breach Because Plaintiffs Cannot Rely on Parole Evidence to Add Terms to the Written Contracts.

Plaintiffs' contract claims (Counts I and VI) boil down to the assertion that the contracts somehow required Mr. Naffa to 1) "be a legitimate law firm" and 2) have "passed a bar exam and received a license to practice law." Am. Compl. ¶¶ 186, 290. But Plaintiffs do not and cannot maintain that the parties' *written* contracts—supplied by Plaintiffs with their Amended Complaint—contained these terms. *See* Am. Compl. Exs. B-F. Instead, Plaintiffs claim that "external discussions, promises and representations" added these terms to the written contracts. *See id.* ¶¶ 186, 290.

Under D.C. law, "when the parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as legally inoperative parol evidence of the prior negotiations and oral agreements." *Stamenich v. Markovic*, 462 A.2d 452, 455 (D.C. 1983) (quoting *Giotis v. Lampkin*, 145 A.2d 779, 781 (D.C. 1958)). Furthermore, where a "document is facially unambiguous, its language should be relied upon as providing the best

objective manifestation of the parties' intent." *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 927 (D.C. 1992) (quoting *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984)). Here, Plaintiffs do not claim that there is anything ambiguous about the contract—they simply seek to add terms it does not contain. But parol evidence that "tends to contradict, vary, add to, or subtract from the terms of a written contract must be excluded" as a matter of law. *Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320, 327 (D.C. 2001) (quoting *Fistere, Inc. v. Helz*, 226 A.2d 578, 580 (D.C. 1967)).

Plaintiffs emphasize what they subjectively "intended." *See, e.g.*, Am. Compl. ¶ 35. But contract law is not about subjective desires. It is about objective bargains—and when those bargains have been reduced to writing, they may not be modified by vague allusions to alleged verbal representations or any other materials outside of the contracts themselves. In short, Plaintiffs have failed to properly plead that Mr. Naffa breached any term of the parties' agreements.

### B. Plaintiffs Contract Claims Do Not Properly Plead Damages.

It is black-letter law that, in the absence—as here—of a contractual liquidated damages clause, a breach of contract claim requires proof of *actual* damages. *See, e.g.*, *Carley Cap. Grp. v. Newport News*, 709 F. Supp. 1387, 1396 (E.D. Va. 1989) (stating that "[i]n order to recover for breach of . . . contracts, plaintiffs must prove, by a preponderance of the evidence . . . that the breaches are the cause of actual damages sustained by plaintiffs" (citations omitted)). But here, the Plaintiffs "complaint appears devoid of allegations that explain how the Plaintiff suffered actual damages." *Eslick v. Cenlar, Cent. Loan Admin. & Reporting*, Civil No. 2:17cv381, 2017 WL 4836541, at *3 (E.D. Va. Oct. 3, 2017). Plaintiffs do *not* allege, for example, that Mr. Naffa's purported lack of qualifications resulted in missed deadlines, or inaccurate advice that proved costly, or any other *actual* harm. Nor do Plaintiffs allege actual damages arising from

Mr. Naffa's failure to be part of a law firm—there is no claim that he was unavailable when needed, or slow to respond, or anything else relating to the fact that he was (as Plaintiffs knew from the *nine years* that he worked at their premises) providing the contracted services himself.

Instead, Plaintiffs advance the entirely conjectural theory that they were damaged to the extent of the *entire* "amounts paid for unlicensed services." Am. Compl. ¶¶ 199, 303. This allegation, however, is impossible to square with the D.C. UPL Committee's decision. This Court can, of course, consider the UPL Committee's decision on a motion to dismiss now that it is "explicitly relied on in the [amended] complaint" since Plaintiffs "do not challenge [the decision's] authenticity." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see also Ali v. Allergan USA, Inc.*, No. 1:12–CV–115 (GBL/TRJ), 2012 WL 3692396, at *1 n.1 (E.D. Va. Aug. 23, 2012) (indicating that judicial notice would *also* be proper under Federal Rule of Evidence 201(c)(2)). As noted above, the UPL Committee's decision—directly contrary to Plaintiffs' continuing, repeated, and wholly unsubstantiated assertions, *see, e.g.*, Am. Compl. ¶¶ 75-82, 101-02, 155-63, 176-77, 205, 211-12, 217-18, 237, 242—unambiguously concluded: "Mr. Naffa did not engage in the unauthorized practice of law while working as an internal counsel from 2011 to 2019 for two different offices within the Kuwait Embassy . . . ." Ex. B at 6. Given that authoritative determination by the UPL Committee, the *difference*—as a matter of law—between the value of the services provided by Mr. Naffa and the value of the same services had they been provided by a D.C.-licensed lawyer was *zero* in the absence of a showing of *actual* harm. For purposes of these services, according to the UPL Committee, Mr. Naffa was the *same* as a D.C.-licensed lawyer as a matter of law.[6]

_____

[6] Indeed, as Plaintiffs were well aware when they hired him, Mr. Naffa was a far *better* fit for their needs than a D.C.-barred lawyer. On the one hand, Mr. Naffa had the broad international experience and fluency in Arabic necessary to provide the services the Embassy required. On

Finally, Plaintiffs' claim that Mr. Naffa's services had no value because they *intended* to hire "a qualified law firm staffed by [U.S.-barred] lawyers," Am. Compl. ¶ 35, cannot meet Plaintiffs' pleading burden to show actual damages. Like contractual terms, actual damages cannot be subjective. Suppose Plaintiffs had deeply desired (without so stating in the contract) to contract with an entire firm of licensed plumbers to provide a new heating system at the Embassy, but later found out that their contractor was solo and unlicensed. Plaintiffs obviously could not properly plead damages by claiming they were harmed by the entire amount they paid for the heating system, such that they could keep it and pay nothing. To the contrary, to validly plead damages, Plaintiffs would be required to plead the *actual* difference in value between the heating system contracted for and that received. The same is true here. Wild claims that Mr. Naffa's years of services to the Embassy had *no* value because Plaintiffs subjectively desired an entire firm of licensed lawyers cannot suffice to show *actual* damages.[7]

Of course, in the heating-system example, Plaintiffs could also complain to the relevant plumbers licensing authority that the contractor was acting unlawfully by installing a heating system without certification. Here, however, Plaintiffs did the equivalent by going to the UPL Committee—but, again, the Committee disagreed, finding that Mr. Naffa *was* authorized to

---

the other hand, as a non-lawyer, he was willing to accept relatively low compensation—it would be extremely difficult to retain a D.C.-barred lawyer (to say nothing of an entire firm) competent to perform all of the services that Mr. Naffa provided beginning at $45,000 *annually*.

[7] It is also worth noting that Plaintiffs' arguments make little sense as a logical matter. As noted above, by the time of Mr. Naffa's *third* contract with the Military Office, he was providing a host of services and also required to be "[o]n call at any time in case if needed for any legal related matter." *See* Am. Compl. Ex. D, at 1. By that time, his annual compensation was $85,000. *Id.* at 2. But it obviously is extremely unrealistic to hire an entire law firm of licensed attorneys in D.C. to be "[o]n call at any time" for that amount. In any event, however, Plaintiffs have simply failed to plead any reasonable theory of damages.

perform the contracted services.  As discussed directly below, Plaintiffs cannot now relitigate that determination.

### C.   Plaintiffs Cannot Relitigate the UPL Committee's Ruling.

Plaintiffs' original Complaint relied almost entirely on repeated assertions of "unauthorized practice"—albeit repackaged as claims of breach of contract and fraud in the inducement—but failed to even acknowledge the UPL Committee's authoritative decision rejecting their arguments.  Now that Defendants have informed the Court of that decision—as Plaintiffs themselves were required to do—Plaintiffs' Amended Complaint seeks to repackage those same claims yet again, mostly by using the term "unlicensed" in addition to "unauthorized."[8]  *See, e.g.*, Am. Compl. ¶¶ 195-97, 199, 299-01, 303.  But that is a distinction without a difference.  Plaintiffs' claims are still expressly based on a purported difference in value between "licensed" and "unlicensed" services provided in the District of Columbia.  But by determining that Mr. Naffa was qualified to provide the services called for under these same contracts, the D.C. UPL Committee found that there *is no such difference.*  Plaintiffs' contract claims are accordingly barred by the doctrines of issue preclusion and primary jurisdiction.

With respect to the former, "a federal court must give to a state-court judgment the same preclusive effect" that would be given "under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  For this purpose, state "court" judgments may include administrative actions.  *See, e.g.*, *Settle v. S.W. Rodgers, Co.*, 998 F. Supp. 657, 664-65 (E.D. Va. 1998); *Layne v. Campbell Cnty. Dep't of Soc.*

---

[8] That is not to say that Plaintiffs have abandoned the allegations that Mr. Naffa engaged in the unauthorized practice of law and held himself out as authorized to practice law in D.C.  They continue to repeat these allegations, which have been considered and conclusively rejected by the UPL Committee, *see* Ex. B at 3 n.6, 6, throughout the Amended Complaint.  *See* Am. Compl. ¶¶ 299-300, 309, 313-14, 316-17, 322-23, 342.

*Servs.*, 939 F.2d 217, 219-21 (4th Cir. 1991).  Here, the D.C. courts plainly would not permit Plaintiffs to relitigate their "unauthorized" practice claim by merely changing the word "unauthorized" to "unlicensed."  This Court should not allow that in the federal system either.

Plaintiffs' allegation that "[t]he Ministry of Health and the Health Office were not aware of the CUPL complaint, did not participate in the complaint, and are not bound by its outcome," Am. Compl. ¶ 179, does not change this analysis.  Issue preclusion applies when, in a previous case, an issue was (1) actually litigated, (2) decided in a valid and final disposition on the merits, (3) "after a full and fair opportunity for litigation by the same parties or their privies," and (4) essential to the judgment.  *Colvin v. Howard Univ.*, 257 A.3d 474, 482-83 (D.C. 2021) (quoting *Smith v. Jenkins*, 562 A.2d 610, 617 (D.C. 1989)).

Even if not considered the same party,[9] the Ministry of Defence and the Ministry of Health are in privity because they are agencies of the same government.  *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940) (holding that "[t]here is privity between officers of the same government"); *Mervin v. FTC*, 591 F.2d 821, 830 (D.C. Cir. 1978) (applying the *Sunshine* principle to agencies of the same government).  The Amended Complaint alleges that the Ministry of Defence and the Ministry of Health are "foreign governmental bod[ies] organized within the executive branch of Kuwait."  Am. Compl. ¶¶ 1-2.  As bodies of the government of Kuwait, the Ministry of Defence and the Ministry of Health are in privity, and the D.C. UPL Committee's decision is binding on both.

With respect to the doctrine of primary jurisdiction, "there is no fixed formula for determining when primary jurisdiction applies"—the issue is whether the purposes of the

---

[9] As discussed above, *see* Part I.A., both Offices are part of a single legal entity, the Embassy of Kuwait, and therefore *should* be considered the same party.

doctrine will be aided by its application to the particular litigation. *Advamtel, LLC v. Sprint Commc'ns Co.*, 105 F. Supp. 2d 476, 480 (E.D. Va. 2000). To aid in this determination, courts have adopted the following four-factor test:

> 1. Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> 2. Whether the question at issue is particularly within the agency's discretion;
> 3. Whether there exists a substantial danger of inconsistent rulings; and
> 4. Whether a prior application has been made to the agency.

*Id.* Courts must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings. *See Ricci v. Chi. Mercantile Exch.*, 409 U.S. 289, 321 (1973) (Marshall, J., dissenting).

The application of this test is straightforward here. Whether Mr. Naffa was qualified to provide the services at issue here is a policy-driven determination over which the D.C. Court of Appeals has delegated broad authority to the UPL Committee. And Plaintiffs *did* make a prior application to it on the UPL issue here—and the Committee expressly ruled against the Plaintiffs. The purposes of the doctrine of primary jurisdiction will therefore be served by its application here. Moreover, there can be no concern about delay at the UPL Committee—*they have already ruled on this issue* and will waste no further resources on it, while this Court would of course need to do so to come to a *de novo* conclusion on the same issue. Recognizing the UPL Committee's primary jurisdiction over the UPL issue will accordingly conserve judicial resources while not requiring any further action from the UPL Committee. The result is that this Court lacks jurisdiction over Plaintiffs' contract claims for this reason as well.

**III. PLAINTIFFS HAVE NOT PROPERLY PLEADED FRAUDULENT INDUCEMENT.**

    **A. Plaintiffs Have Not Properly Pleaded the "Material Fact" or "Reasonable Reliance" Elements of Fraud in the Inducement.**

Under substantive D.C. law, the elements of fraud in the inducement include: "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *Hercules & Co.*, 613 A.2d 923 (citing *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977)).

Plaintiffs do not plead a misrepresentation with respect to any fact that was actually *material* to the agreement. There is no need to repeat the details of our argument above but, again, the D.C. UPL Commission has held that Mr. Naffa was fully qualified to perform the services he undertook to perform. Mr. Naffa's lack of the characteristics that the Plaintiffs claim to have subjectively desired is therefore not material.

Even assuming materiality, Plaintiffs must also show that their reliance on representations outside of the contracts was *reasonable*: "In order to prove reliance, a [party] must demonstrate that its reliance upon the [claimed fraudulent] representation was reasonable and justified." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (citation omitted). Furthermore, "reliance on a false representation is *not* justified where the relying party fails to undertake a prudent investigation." *Id.* at 630 (emphasis added). Here, as discussed above, Plaintiffs do not claim to have undertaken *any* investigation—to say nothing of an objectively prudent one—and any purported reliance accordingly was not reasonable.

Additionally, the fact that these representations were outside the contracts itself indicates that the representations were not material and that Plaintiffs could not reasonably rely on them. *See Hercules & Co.*, 613 A.2d at 932 (finding that if the plaintiff had "considered these

assurances important enough to induce it to agree to the contract . . . it could have conditioned its agreement on the explicit inclusion of those representations in the contract").

**B.  Plaintiffs Have Failed to Plead Any Purported Fraud with Specificity.**

As noted above, it is also well established that causes of action for fraud must be pleaded with specificity.  Rule 9 of the Federal Rules of Civil Procedure expressly provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  That requires, at a minimum, that plaintiffs alleging fraud must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *United States ex rel. Wilson v. Kellog Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted). These facts are commonly described as the "'who, what, when, where, and how' of the alleged fraud."  *Id.* (citation omitted).

The Amended Complaint does not come close to satisfying this requirement.  While it alleges that Mr. Naffa was the "who," the Amended Complaint does not state with specificity the "what, when, where, *or* how" of what was allegedly said or done to mislead the Plaintiffs.  The fraud-in-the-inducement claims must accordingly be dismissed.

**C.  Plaintiffs Improperly Seek *Both* Recission and Damages.**

Under D.C. law, a party alleging fraud in the inducement can seek one of two mutually exclusive remedies—recission or damages.  *Dean v. Garland*, 779 A.2d 911, 915 (D.C. 2001). Plaintiffs have alleged both, "in the alternative to or in addition to" money damages.  *See* Am. Compl. 7, ¶¶ 240, 242, 345, 348.

However, a party that continues performance after discovering the alleged fraud in inducement cannot seek recission.  *Dean*, 779 A.2d at 915.  As explained further above, *see* Part I.A., the Ministry of Health discovered the alleged fraud in the inducement no later than

November 2019.  Rather than terminating its agreement with Mr. Naffa immediately, it merely

"refused to renew the contract in 2020."  Am. Compl. ¶ 153; *see also* Am. Compl. Ex. E, at 2.

Because the Ministry of Health continued performing under the agreement even after it

discovered the alleged fraud in the inducement, the Court should at a minimum dismiss its

claims for recission.

## IV.     PLAINTIFFS' PROMISSORY ESTOPPEL CLAIMS FAIL TO PROPERLY PLEAD *ANY* ELEMENT OF THAT CAUSE OF ACTION.

On the substance of Plaintiffs' promissory estoppel claims, D.C. law applies.  That law

requires that "there must be evidence of a promise, the promise must reasonably induce reliance

upon it, and the promise must be relied upon to the detriment of the promisee."  *Simard v.*

*Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994).  Further, the theory may be invoked

only when "injustice otherwise [would] not [be] avoidable."  *Bender v. Design Store Corp.*, 404

A.2d 194, 196 (D.C. 1979) (citation omitted).  The Amended Complaint fails to properly plead

any of these elements.

As noted above, the Amended Complaint is—literally—long on conclusory allegations

and short on anything that even remotely resembles "evidence."  As noted above, the Amended

Complaint contains virtually nothing by way of "what, when, where, [or] how."  *Kellog Brown*

*& Root*, 525 F.3d at 379.

With respect to the *reasonableness* of Plaintiffs' purported reliance, we need not repeat in

detail what we have already said:  If it was critical to Plaintiffs to hire an entire law firm of D.C.-

barred lawyers to do what they hired Mr. Naffa to do, they could readily have ascertained

whether he had those characteristics.  They do not allege even making the attempt.  And

Plaintiffs have no more pleaded detriment than they have damages—the two are one and the

same.  Again, Plaintiffs do not point to a single misstep of *any* sort by Mr. Naffa in the

performance of *any* of his duties that harmed Plaintiffs in *any* way. It is hard to imagine less

detriment than that.

Moreover, the D.C. Court of Appeals' decision in *Kauffman v. International Brotherhood*

*of Teamsters*, 950 A.2d 44 (D.C. 2008), explained in an analogous context why Plaintiffs have

failed to plead anything close to unavoidable injustice. There, the court wrote:

> As an alternative to his breach of contract claim, [Plaintiff] invokes the doctrine of
> promissory estoppel, but . . . it appears merely to restate his breach of contract claim
> in other dress. [Plaintiff] cites no promise on which he relied to his detriment other
> than the same term [the court found to no longer be part of the contract]. . . .
> [Plaintiff], in short, offers no reason why rejection of his breach of contract claim
> under the principles we have discussed results in an "injustice."

*Id.* at 49 (citation omitted). That same is true here, only more so—Plaintiffs made unauthorized

practice claims, then dressed them as contract claims and fraud-in-the-inducement claims and

have now reclothed them yet again as promissory estoppel claims. This is just old wine in new

bottles, and there is no injustice in saying so.

Finally, following from the principle that there is no unavoidable injustice when a

plaintiff can pursue a breach of contract claim, D.C. law only recognizes promissory estoppel in

the absence of an express contract. *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C.

2010). An express contract is one whose terms are "are stated either orally or in writing." *Ames*

*v. HSBC Bank USA, N.A.*, Civil Action No. 06 2039 (RMC), 2007 WL 1404443, at *2 (D.D.C.

May 11, 2007). Plaintiffs have attached the express contracts at issue here to the Amended

Complaint and even acknowledge entering into these contracts in their promissory estoppel

claims. *See* Am. Compl. ¶¶ 273, 355. Because the existence of these contracts is not in dispute,

Plaintiffs' promissory estoppel claims should be dismissed. *See Plesha*, 725 F. Supp. 2d at 112

(dismissing a promissory estoppel claim where a copy of the contract at issue was attached to the

complaint and its existence was not disputed); *3D Glob. Sols., Inc. v. MVM, Inc.*, 552 F. Supp. 2d

1, 7 (D.D.C. 2008) (dismissing a promissory estoppel claim because the existence of an express contract was not disputed).

## V.  PLAINTIFFS' CONVERSION CLAIM IS VAGUE AND CONCLUSORY.

It is a "basic pleading requirement" that a plaintiff must "set forth facts sufficient to allege each element of his claim." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002). Moreover, each element of the allegation must be stated in terms that are neither vague nor conclusory.  *Est. Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220-22 (4th Cir. 1994).  Here, Plaintiffs are so vague that they do not even carry Plaintiffs' burden to affirmatively demonstrate their standing and this Court's jurisdiction.  Moreover, while Plaintiffs' allegations as least raise the specter of an absent but necessary party, they do not provide enough information to make that determination with any degree of confidence.

The Amended Complaint alleges that, at some unspecified time and in relation to some unspecified transactions, Mr. Naffa "unlawfully exercised ownership or control over" someone else's funds.  Am. Compl. ¶ 262; *see also id.* ¶¶ 115-16 (describing transfers of funds without specifying the date or the subject of the related transaction beyond "housing purchase").  To begin, however, it is unclear *whose* funds.  As noted above, public records of which this Court may take judicial notice indicate that certain transactions that we were able to identify in which Mr. Naffa assisted involved the purchase of properties by the *Embassy of Kuwait*, which is not a party here.  *See* Ex. A.  The funds identified in Paragraph 116 of the Amended Complaint may belong to the Embassy.  As a factual matter, Mr. Naffa is prepared to prove funds in this amount were returned by check *to the Embassy by the seller*.  But there is no need for that yet—as a legal matter, Plaintiffs have not established that they even have standing to make this claim.  Even if they do, at a minimum it appears likely that the Embassy of Kuwait is a necessary party under

Federal Rule of Civil Procedure 19—Mr. Naffa certainly cannot be held to account for the same funds twice.

Plaintiffs also have not supplied dates for whatever transactions are at issue. It is therefore unclear whether this claim, like all of Plaintiffs' others, is barred by the statute of limitations—but it certainly may be.

Plaintiffs also seek "compensation for the value of any diverted funds that have not been returned," Am. Compl. ¶ 264, but do not allege that there *are* any such funds. Again, as a factual matter, there are not. But the same simple point applies here as in the discussion above: As a matter of law, the Amended Complaint does not contain sufficient information to even know what funds—or whose, or as to what transaction or transactions, that occurred when—are at issue. Again, it may be that any such funds would belong to the Embassy of Kuwait, again raising issues regarding both Plaintiffs' standing and the Embassy as a "necessary party." It may be that the transactions occurred outside of the limitations period. But it is frankly impossible to tell from the allegations the "what, when, where, and how" of what Plaintiffs are alleging Mr. Naffa did to violate the law. Plaintiffs' conversion claim should be dismissed on the ground that it is too vague and conclusory to go forward, and Plaintiffs have not established standing or jurisdiction.[10]

---

[10] For the same reasons, Plaintiffs' breach of fiduciary duty claim should be dismissed. Plaintiffs make similarly vague and conclusory allegations that Mr. Naffa breached his duties to Plaintiffs by "providing real estate settlement documents to Plaintiff that did not accurately show the distribution of funds" and "by personally receiving and holdings funds that Plaintiff had not authorized Naffa to receive." *See* Am. Compl. ¶¶ 250-51. Like Plaintiffs' conversion claim, there is not enough information to determine what transactions are at issue, whose funds are involved, and the date of the alleged breaches (although, as argued above, *see* Part I.D., even accepting Plaintiffs' theory that the breaches were only discovered "sometime in 2020," Am. Compl. ¶ 254, the claims are time-barred).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Amended Complaint.


Dated: January 13, 2023

Respectfully Submitted,

/s/ Thomas G. Connolly

Thomas G. Connolly (VA Bar No. 29164)
Thomas B. Mason (*admitted pro hac vice*)
Timothy J. Simeone (*admitted pro hac vice*)
Attorneys for Joseph Naffa and Naffa &
Associates, LLP
HWG LLP
1919 M Street NW, Eighth Floor
Washington, D.C. 20036
Telephone: (202) 730-1300
Fax: (202) 730-1301
tconnolly@hwglaw.com
tmason@hwglaw.com
tsimeone@hwglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January 2023, an electronic copy of the foregoing will be served using the Court's CM/ECF system on the following:

> Evan R. Smith
> Cogent Law Group LLP
> 1875 K Street, NW
> 4th Floor
> Washington, DC 20006
> Office: (202) 644-8880
> Fax: (202) 644-8880
> esmith@cogentlaw.com
>
> *Counsel for The Ministry of Defence of the State of Kuwait and The Ministry of Health of the State of Kuwait*

/s/ Thomas G. Connolly

Thomas G. Connolly (VA Bar No. 29164)
Attorney for Joseph Naffa and Naffa & Associates, LLP
HWG LLP
1919 M Street NW, Eighth Floor
Washington, D.C. 20036
Telephone: (202) 730-1300
Fax: (202) 730-1301
tconnolly@hwglaw.com